UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

ROBERT HALLMAN,

          Petitioner,           Case No. 1:19-cv-717

v.                                          Honorable Paul L. Maloney

RANDEE REWERTS,

          Respondent.
_____/

## REPORT AND RECOMMENDATION

      This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254.  Petitioner Robert Hallman is incarcerated with the Michigan Department of Corrections at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan.  On October 10, 2016, following a six-day jury trial in the Kent County Circuit Court, Petitioner was convicted of first-degree premeditated murder, in violation of Mich. Comp. Laws § 750.316, felon in possession of a firearm (felon-in-possession), in violation of Mich. Comp. Laws § 750.224f, and use of a firearm during the commission of a felony (felony-firearm), in violation of Mich. Comp. Laws § 750.227b.  On November 10, 2016, the court sentenced Petitioner as a third habitual offender to concurrent sentences of four to ten years for felon-in-possession and life for murder.  Those sentences were to be served consecutively to a two-year sentence on the felony-firearm conviction.

On August 30, 2019, Petitioner filed his habeas corpus petition raising two grounds for relief, as follows:

    I.    Did the Trial Court abuse its discretion by admitting MRE 404(B);

    II.    Was the evidence insufficient to support the conviction, First Degree Murder.

(Pet., ECF No. 1, PageID.6–7.) Respondent has filed an answer to the petition (ECF No. 6) stating that the grounds should be denied because they are not cognizable, meritless or both. Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are either not cognizable or meritless. Accordingly, I recommend that the petition be denied.

## Discussion

### I. Factual allegations

The Michigan Court of Appeals described the facts underlying Petitioner's convictions as follows:

> This case arises out of a shooting that occurred on March 9, 2016, in an apartment complex located in Grand Rapids, Michigan. Before the shooting, defendant, Stroy Pittman, Anthony Finley, Will Ferrell, and Jeffery Johnson were drinking and doing drugs together in Finley and Johnson's apartment. Pittman (who lived next door) and defendant had an altercation that became physical. After Johnson separated the two men, defendant left the premises. Later, someone entered the apartment and shot Pittman 21 times with a rifle. Ferrell told police that he believed that defendant had fired the shots, but Ferrell, Johnson, and Finley were not able to definitively identify defendant as the shooter. Ferrell's belief was based in part on the knowledge that defendant owned an assault rifle. Johnson also testified that he had seen defendant in possession of a rifle two to three weeks before the shooting. Both witnesses described the rifle as "Army fatigue" in color, with a case and a scope. A neighbor, Ernest Rogers, testified that he

had observed someone exit an "orange'ish[sic]" pickup truck carrying what appeared to be a gun; after the gunshots, Rogers saw someone get into the same truck and drive away. Defendant drove a maroon or burgundy pickup truck. Surveillance video of the parking lot confirmed that a man exited a pickup truck with an unidentified object in his hand before the shooting and returned to the truck and drove away after the shooting.

Thirty-one .223 caliber shell casings were found at the scene. A search of defendant's home revealed two .223 caliber shell casings, a gun case, two gun magazines, a scope, and unfired .223 ammunition. One of the shell casings found in defendant's backyard was the same brand as those found at the scene of the shooting. No rifle was ever recovered.

Defendant testified that a rifle in a case had been stored in his truck that evening, but that it belonged to Ferrell, and that Ferrell had placed the rifle in defendant's bedroom earlier that evening. Defendant further testified that he left the apartment after the altercation and was driving himself to the hospital because of chest pains when he was stopped by police. No weapons, ammunition, or forensic evidence was found in defendant's truck.

The prosecution introduced evidence, under MRE 404(b), that defendant had fired a rifle at two other individuals on two separate occasions (once in 2008 and again in 2012) after arguing with them while intoxicated.

(Mich. Ct. App. Op., ECF No. 7-14, PageID.770–771.) "The facts as recited by the Michigan Court of Appeals are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1)." *Shimel v. Warren*, 838 F.3d 685, 688 (6th Cir. 2016). Although Petitioner denies that some of the events described by the other witnesses occurred, his habeas challenges do not call into question the accuracy of the appellate court's description of the testimony.

Petitioner, with the assistance of counsel, appealed his convictions, raising the same two issues in the Michigan Court of Appeals that he raises in his habeas petition. (Pet'r's Appeal Br., ECF No. 7-14, PageID.800.) The Michigan Court of Appeals denied relief in an unpublished opinion issued January 11, 2018. (Mich. Ct. App. Op., ECF No. 7-14, PageID770–776.) Petitioner then filed a *pro per* application for leave to appeal to the Michigan Supreme Court, again raising the same two issues he raises in his habeas petition. (Pet'r's Appl. for Leave to Appeal, ECF No. 7-16, PageID.1012–1013.) The Supreme Court denied leave to appeal by order entered July 3, 2018. (Mich. Order, ECF No. 7-16, PageID.1010.)

This timely petition followed.

## II.  AEDPA standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision."

*Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)) (internal quotation marks omitted)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in

5

existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664. "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly

6

established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id.* (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

### III. Prior "bad acts" (habeas ground I)

Petitioner objects to the trial court's admission of (1) evidence regarding an incident in Kentwood, Michigan, during 2008 where Petitioner purportedly fired shots while drunk and angry, and (2) evidence regarding an incident in Grand Rapids during 2012 where Petitioner purportedly fired shots when drunk and angry. Petitioner's brief attacks the admission of evidence regarding the shooting incidents in 2008 and 2012 on two levels. First, Petitioner argues that the trial court and the court of appeals erred in concluding that the evidence was admissible under the Michigan Rules of Evidence. Second, Petitioner argues that the admission of evidence that has as its purpose or effect a tendency to show that Petitioner had a propensity to commit shooting crimes violated Petitioner's constitutional rights.

7

The extraordinary remedy of habeas corpus lies only for a violation of the Constitution. 28 U.S.C. § 2254(a). As the Supreme Court explained in *Estelle v. McGuire*, an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." 502 U.S. at 67–68. The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). The court of appeals ruled that evidence regarding the 2008 and 2012 incidents was inadmissible under the Michigan Rules of Evidence. (Mich. Ct. App. Op., ECF No. 7-14, PageID.771) ("Defendant first argues that evidence of the two prior shooting incidents was inadmissible under MRE 404(b). We disagree."). That decision is axiomatically correct on habeas review.

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle*, 502 U.S. at 68. It is possible that an evidentiary ruling—even a ruling that is axiomatically correct under state law—still violates due process. State-court evidentiary rulings can rise to the level of due process violations if they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000)

8

(quotation omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). This approach accords the state courts wide latitude in ruling on evidentiary matters. *Seymour*, 224 F.3d at 552 (6th Cir. 2000).

Further, under the AEDPA, the court may not grant relief if it would have decided the evidentiary question differently. The court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts. *Sanders*, 221 F.3d at 860. Petitioner has not met this difficult standard.

There is no clearly established Supreme Court precedent that holds that a state court violates the Due Process Clause by permitting propensity evidence in the form of other bad acts evidence. In *Estelle*, the Supreme Court declined to hold that the admission of prior acts evidence violated due process. *Estelle*, 502 U.S. at 75. The Court stated in a footnote that, because it need not reach the issue, it expressed no opinion as to whether a state law would violate due process if it permitted the use of prior crimes evidence to show propensity to commit a charged crime. *Id.* at 75 n.5.

While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172 (1997); *Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms. The Sixth Circuit has found that "[t]here

9

is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh*, 329 F.3d at 512. Therefore, the state court's admission of such evidence cannot be contrary to, or an unreasonable application of, clearly established federal law and Petitioner is not entitled to habeas relief on this claim.

### IV.    Insufficient evidence (habeas ground II)

A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id*. Witness credibility remains the province of the jury, *see Herrera v. Collins*, 506 U.S. 390, 401-02 (1993), and an attack on witness credibility constitutes a challenge to the quality, but not the sufficiency of the government's evidence. *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002). The habeas court need only examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008). This standard erects " 'a nearly insurmountable hurdle' " for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds. *Davis*, 658 F.3d at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

The Michigan Court of Appeals resolved Petitioner's challenge to the sufficiency of the self-defense evidence by applying the following standard:

> In reviewing sufficiency of the evidence claims, we view the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Nowak*, 462 Mich 392, 399-400; 614 NW2d 78 (2000). We must also "draw all reasonable inferences and make credibility choices in support of the jury verdict." *Id.* at 400.

(Mich. Ct. App. Op., ECF No. 7-14, PageID.774.) Although the state appellate court relied upon state authority, the standard it applied was functionally identical to the standard spelled out in *Jackson v. Virginia* and, indeed, the state authority cited expressly relied on *Jackson* as a source of the standard. *People v. Nowak*, 614 N.W.2d 78, 81 (Mich. 2000).

Moreover, the state court applied the standard as *Jackson* directs. The court considered the evidence in a light that favored the prosecution, with reference to the state-law elements of the offense of first-degree murder, leaving to the jury resolution of disputed factual issues, including credibility:

11

> Here, viewing the evidence in the light most favorable to the prosecution, it is clear there was sufficient evidence to support defendant's first-degree murder conviction. Although the prosecution presented mainly circumstantial evidence of defendant's identity as the killer, identity may be inferred from circumstantial evidence alone. See *Unger*, 278 Mich App at 223, 225-227. There was direct evidence that defendant was at the scene of the crime the evening of Pittman's murder and that defendant had earlier argued with Pittman.
>
> Other evidence also supplied reasonable inferences that defendant was the shooter. Even defendant's version of the events of the evening permitted the inference that he had access to a rifle. Further, Ferrell and Johnson testified that they had previously observed defendant with an assault rifle. Surveillance video showed an individual going to a pickup truck and removing an object. Rogers testified that he saw a man leave the same truck with a gun, heard rapid shots, and then witnessed a man leave the apartment, reenter the truck, and drive away. Additionally, police collected a shell casing from defendant's backyard that matched the shell casing recovered at the scene of the shooting. The evidence was sufficient to enable the jury to rationally find that defendant possessed the rifle that evening. See *Johnson*, 293 Mich App at 83.
>
> Further, there is evidence that defendant intended to the kill Pittman and that the shooting was premeditated and deliberate. See *Marsack*, 231 Mich App at 370. Defendant had a motive to kill Pittman, having been in a fight with him earlier in the evening. Defendant had ample time between retrieving the rifle from his truck and walking back inside the apartment to contemplate his actions and to take a second look. See *Anderson*, 209 Mich App at 537. And [the] manner in which defendant killed Pittman, shooting at him more than 30 times and hitting him more than 20 times, including in several major organs and causing many wounds that individually would have been fatal, is an indication of his intent to kill Pittman. See *id*. Also, defendant fled the scene after the shooting. See *id*. The combination of all this evidence, and all reasonable inferences drawn therefrom, is sufficient to establish the elements of first-degree murder. Although defendant argues that there was evidence (chiefly defendant's own testimony that Ferrell owned the rifle and had it in his bedroom) that Ferrell was the shooter, the prosecution was not required to negate every theory consistent with defendant's innocence. See *People v Hardiman*, 466 Mich 417, 424; 646 NW2d 158 (2002). There was sufficient evidence to support defendant's first-degree murder conviction.

(*Id.*, PageID.2231-2232).

Petitioner does not contest the evidence relied upon by the court of appeals as sufficient to support the verdict. Instead, he points out the inconsistencies in the testimony offered as part of the prosecution's case. Essentially, Petitioner invites this Court to turn the *Jackson* standard on its head by viewing the evidence in a light that favors him and then invading the province of the jury by drawing different inferences and making different credibility determinations.

*Jackson* holds that it is the jury's province to draw reasonable inferences from basic facts to ultimate facts. 443 U.S. at 319. In *Coleman v. Johnson*, 566 U.S. 650 (2012), the Supreme Court provided guidance "in determining what distinguishes a reasoned inference from 'mere speculation.'" *Id*. at 655. The Court described a reasonable inference as an inference that a rational jury could make from the facts. Certainly, the inferences identified by the court of appeals rationally flow from the underlying facts. The inferences are not compelled by those facts. The inferences may not even be more likely than not; they are simply rational. *Id*. at 656. To succeed in his challenge, Petitioner must show that the identified inferences are irrational. He has not. Instead, his argument depends on ignoring the reasonable inferences identified by the court of appeals and adopting other inferences that favor Petitioner.

Petitioner has failed to show that the Michigan Court of Appeals' determinations of fact in support of the sufficiency analysis are unreasonable on the record. Petitioner has also failed to show that the appellate court's determinations of the sufficiency of the evidence supporting the verdict are contrary to, or an

unreasonable application of, *Jackson*, the clearly established federal law regarding sufficiency of the evidence. Accordingly, he is not entitled to habeas relief.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, I have examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong. Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

Moreover, although I conclude that Petitioner has failed to demonstrate that he is in custody in violation of the constitution and has failed to make a substantial showing of a denial of a constitutional right, I would not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## **Recommended Disposition**

For the foregoing reasons, I recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied. Finally, I recommend that the Court not certify that an appeal would not be taken in good faith.

Dated:  March 25, 2021                         /s/ Phillip J. Green
                                                  PHILLIP J. GREEN
                                                  United States Magistrate Judge

## **NOTICE TO PARTIES**

ANY OBJECTIONS to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).